**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren Udd, et al., | No. CV-18-01616-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs Darren and Amy Udd's (collectively, "the Udds") motion to supplement their Mandatory Initial Discovery Pilot ("MIDP") disclosures and the summary judgment record. (Doc. 120.) Defendants Mary Roberts and the City of Phoenix (collectively, "Defendants") oppose this motion. (Doc. 123.) For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

The full factual and procedural history of this case is set out in the Court's March 31, 2020 order. (Doc. 122.) To briefly summarize, Darren Udd formerly worked as a homicide detective for the Phoenix Police Department ("PPD"). (*Id*. at 1.) The PPD conducted a criminal investigation of Darren for time theft. (*Id*. at 2.) After a six-month investigation—which Darren claims was retaliatory, discriminatory, and methodologically flawed—was unable to account for Darren's missing hours, Assistant Chief Roberts submitted his case to the Maricopa County Attorney's Office ("MCAO"), which declined to prosecute because there was no reasonable likelihood of conviction. (*Id*. at 7-8.) A separate criminal investigation into the Udds' unauthorized use of a parking pass concluded

in the same manner.  (*Id*. at 7, 9.)  Darren retired during the subsequent administrative investigation into allegations that he (1) failed to complete his full duty shifts and (2) parked his city vehicle at his residence.  (*Id*. at 8-9.)  One focal point of the Udds' claims is that the "incident reports" summarizing the criminal investigations into both Darren and Amy falsely stated they had been arrested, which was due to a "bug" in the PPD software requiring administrators to check the "arrested" box whenever an investigation was submitted to a prosecutor's office, regardless of whether the party was arrested.  (*Id*. at 10-11.)

On September 13, 2018, the MCAO determined, based on information provided by the PPD, that Darren's name would be placed on the *Brady* list.  (Doc. 105-1 at 193.)  However, on October 12, 2018, the MCAO changed course and determined that Darren's name would be removed from the *Brady* list.  (*Id*. at 196.)  The Udds acknowledged in their MIDP disclosures and in their response to Defendants' motion for summary judgment that Darren's name had been removed from the *Brady* list.  (Doc. 120 at 3; Doc. 105 at 13.)

On March 18, 2020, the Court provided the parties with a tentative ruling on their cross-motions for summary judgment (as well as two other motions).  (Doc. 115.)

On March 20, 2020, the Udds filed the present motion.  (Doc. 120.)

On March 23, 2020, the Court heard oral argument concerning the four motions addressed in the tentative order.  (Doc. 121.)

On March 31, 2020, the Court issued a 65-page order resolving the four motions.  (Doc. 122.)  In that order, the Court noted:

> On March 20, 2020, Plaintiffs filed a motion to supplement the summary judgment record with evidence that Darren's name was not, in fact, removed from the *Brady* list.  Because this motion is not yet fully briefed, the Court will not address it now.  The parties may address the summary judgment ramifications, if any, of Plaintiffs' supplementation request in their yet-to-be-filed response and reply briefs.

(*Id*. at 11 n.4.)  The order went on to discuss Darren's referral for inclusion on the *Brady* list as a potential adverse employment action and an instance of defamation.  (*Id*. at 33-34, 39, 46.)  The order additionally concluded that, because the Udds had not produced any

non-speculative evidence of economic harm based on Defendants' inaccurate checking of the "arrested" box in the incident reports, Darren's negligence claim did not survive summary judgment.  (*Id.* at 48-50.)

On April 3, 2020, Defendants filed a response to the Udds' motion to supplement. (Doc. 123.)

On April 10, 2020, the Udds filed a reply.  (Doc. 124.)

## DISCUSSION

The Udds seek to supplement their MIDP disclosures and the summary judgment record with evidence that Darren's name was not, in fact, removed from the *Brady* list. (Doc. 120.)  The evidence they seek to introduce is an online news article posted by ABC Channel 15 on February 20, 2020, entitled "Database shows every Arizona law enforcement official tracked for 'integrity' concerns." (Doc. 120-1 at 2.)  That news article contains a link to a database and the version of the article attached to the exhibit contains a list of officers that includes Darren's name.  (*Id.* at 4.)  The Udds make this motion without reference to the Federal Rules of Civil Procedure, and neither party suggests what legal standard is applicable.

I.      Motion To Supplement Summary Judgment Record

The Udds claim the new evidence is relevant to their remaining defamation claim and their now-dismissed negligence claim.  (Doc. 124 at 5-6.)  Defendants argue the evidence is irrelevant, unreliable, and inadmissible.  (Doc. 123 at 6-10.)

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  In deciding whether to grant a motion to supplement the record, district courts consider whether the evidence the party is seeking to admit is relevant and also consider whether the motion is made in good faith and whether allowing supplementation would unfairly prejudice the non-moving party.  *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 2017 WL 2721437, *3 (D. Ariz. 2017).  *See also George v. Nw. Mut. Life Ins. Co.*, 2011 WL 3881476, *4 (W.D. Wash. 2011) (granting a motion to supplement where the new evidence was "directly

relevant to the central issues in this matter," "disregard[ing] it simply because it was discovered outside the discovery period would not serve the interests of justice," and there was no evidence that the moving party "acted in bad faith in failing to bring the [evidence] to the Court at an earlier date"). Whether to grant a motion to supplement is within a district court's discretion. *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015) (reviewing denial of a motion to supplement for abuse of discretion).

The Court will decline to supplement the summary judgment record with the proffered evidence. Whether Darren's name continued to be included on the *Brady* list is of no consequence to the March 31, 2020 order. The Court concluded in the order that neither party was entitled to summary judgment on the Udds' defamation claim because triable fact issues remained as to whether the statements in the incident reports were privileged and whether they conveyed a defamatory meaning. (Doc. 122 at 44-46.) Consequently, there was "no need to address the parties' remaining arguments concerning . . . the *Brady* list." (*Id*. at 46.) Because the Court did not need to address the *Brady* list issue in connection with the Udds' defamation claim, it follows that whether Darren's name remains on the list is of no consequence to the summary judgment outcome as to that claim.

This evidence also doesn't compel a different disposition of the Udds' negligence claim. The Court stated that for the Udds' negligence claim to survive summary judgment, they "needed to show, without conjecture or speculation, that the allegedly tortious conduct relating to the arrest records actually caused them to suffer economic harm." (*Id*. at 48.) The Udds contend the inclusion of Darren's name on this list is "undeniably devastating" and that learning his name remains on the *Brady* list is "not theoretical or speculative worries of potential future damages." (Doc. 124 at 5-6.) But absent from the motion to supplement is any non-speculative evidence that Darren's alleged continued inclusion on this list has caused him actual economic harm. There is, for example, no evidence that Darren sought but failed to secure work as a private investigator due to the potential client's belief he'd be subject to impeachment at a theoretical future trial due to his name's inclusion on the list. Nor is there any evidence that, in general, being included on the list

impairs a former law enforcement officer's future earning capacity.  Moreover, it is unclear why the presence or absence of Darren's name on the list would have any impact on an opposing party's ability to impeach him in a theoretical future trial—the *conduct* that resulted in Darren being considered for inclusion on the *Brady* list remains discoverable and Darren has presented no evidence that, but for the inclusion of his name on the list, that conduct would be off-limits for impeachment purposes.  Finally, the evidence that is already part of the summary judgment record—the October 2018 letter from the MCAO stating that Darren's name would be removed from the *Brady* list—suggests that the database published by the news station is either outdated or inaccurate.

The evidence the Udds seek to introduce does not, in short, alter the Court's earlier conclusion that Darren failed to present non-speculative evidence of economic damages sufficient to survive summary judgment on his negligence claim.  Accordingly, the motion to supplement the summary judgment record will be denied.

II.   Motion To Supplement MIDP Responses

The Udds also seek to supplement their MIDP disclosures with this new evidence. (Doc. 120.)  Their original MIDP disclosures indicated that Darren's name was removed from the *Brady* list in 2018 and the proposed revision would state that his name remains on the list.  (*Id*. at 3.)  Defendants oppose this request on the grounds that the evidence is not relevant to any remaining triable claims and further that the evidence is inadmissible and unreliable.  (Doc. 123 at 6-10.)

The MIDP requires parties to provide information relevant to the parties' claims and defenses, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims and defenses.  "The duty to provide mandatory initial discovery responses . . . is a continuing duty, and each party must serve supplemental responses when new or additional information is discovered or revealed."  General Order 17-08.  The MIDP also directs courts to set deadlines for final supplementation of MIDP responses.  *Id.*   However, scheduling orders issued before the final pretrial conference "may be modified upon a showing of 'good cause.'"  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  Good cause in this context is primarily a question

of diligence.  *Id*. at 609.  Finally, production of information under the MIDP "does not constitute an admission that information is relevant, authentic, or admissible."  General Order 17-08.

Here, the scheduling order set the deadline for final supplementation of MIDP disclosures for June 26, 2019.  (Doc. 29 at 2.)  However, the Udds could not have become aware of this new evidence before February 20, 2020.  Moving to supplement the record to include this new evidence less than a month after discovery suggests the Udds were diligent.  The Udds' motion to supplement their MIDP disclosures will therefore be granted.

Defendants' concerns about relevance, reliability, and admissibility are not without merit.  Defendants point out that maintenance of the *Brady* list is the province of prosecutors' offices, rather than the PPD, and thus the failure to remove Darren's name has no relevance to whether the City published false information about Darren.  (Doc. 123 at 6.)  The provenance of this specific list—published, as Defendants point out, by an entity that is not a party to this suit—is rather murky.  (*Id*. at 9.)  The presence of Darren's name on the list is at odds with other evidence, raising questions about this new list's accuracy.  But General Order 17-08 makes clear that MIDP disclosures are not an admission of relevance, authenticity, or admissibility.  So, although the Udds may supplement their MIDP disclosures with this evidence, this decision is without prejudice to Defendants' ability to seek exclusion of the evidence at trial.

Accordingly, **IT IS ORDERED** that the Udds' motion to supplement the summary judgment record and their MIDP disclosures (Doc. 120) is **granted in part and denied in part**.

Dated this 17th day of April, 2020.

_____
Dominic W. Lanza
United States District Judge